UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Steven K. Lee and Canorous, Inc.,

Plaintiffs,

v.

Civ. No. 00-22(RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

Kudelski, S.A.,

Defendant.

---

Robert Gust, Dady & Garner, Minneapolis, Minnesota, for Plaintiff.

Richard Ihrig, Lindquist & Vennum, Minneapolis, Minnesota, for Defendant.

---

## Introduction

The instant case arises from the demise of an alleged business relationship between Plaintiffs Steven K. Lee ("Lee") and Canorus, Inc. ("Canorus") and Defendant Kudelski S.A. ("KSA"), in which the Plaintiffs endeavored to develop a market for audio products made by KSA in exchange for the right to distribute those products in certain territories. The Plaintiffs brought suit in this Court alleging claims for breach of contract, promissory estoppel, unjust enrichment, recoupment, and fraud. Currently before the Court is KSA's Motion to Dismiss. For the reasons stated below, the Court will deny the Motion.

FILED JUL 13 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD__________
DEPUTY CLERK__________

## Background

Lee is a resident of Minnesota and the sole shareholder of Canorus, Inc., a consulting business. (Lee Decl. ¶¶ 2, 4.) Lee has resided in Minnesota since February of 1998. (Id. ¶ 10.) KSA is a Swiss company organized under the laws of Switzerland, with its principal place of business located in Cheseaux, Switzerland. (Mury Aff. ¶ 4.) KSA is engaged, inter alia, in the manufacture of audiophile products. (Id. ¶ 5.) All of KSA's audio products are manufactured in Switzerland and sold in the United States by independent distributors. (Id. ¶ 6.)

In 1995, Lee approached KSA with a marketing plan for worldwide distribution of amplifiers and pre-amplifiers manufactured by KSA. (Lee Aff. ¶ 4.) KSA indicated that it would be interested in pursuing Lee's proposal if he could demonstrate a viable market. (Id. ¶ 4.) To that end, Lee organized and incorporated Canorus under Massachusetts law in 1996. (Compl. ¶ 7; Lee Aff. ¶ 4.)

In October of 1996, Lee met with Pierre Roy ("Roy"), then general manager of KSA's Nagra Audio Division and Senior Vice-President of KSA. (Lee Aff. ¶ 7.) At the meeting, Lee and Roy agreed that the Plaintiffs would be responsible for continuing to develop a market for KSA's products and, in exchange, the Plaintiffs would receive exclusive rights to market the products in the United States, Canada, and five identified Asian markets. (Id.) Subsequent to this agreement, the Plaintiffs relocated to Nashville,

Tennessee and shared office space with Nagra USA Inc., a United States subsidiary of KSA. (Id. ¶ 8.)

Lee moved to Minnesota on February 28, 1998. (Lee Aff. ¶ 10.) Canorus continued to have office space in Nashville, but, because Lee was the sole shareholder, the operations effectively moved to Minnesota.[1] (Id.) In May 1999, Canorus closed its Nashville office and forwarded its telephone number to Minnesota. (Id. ¶ 11.) Between February 28, 1998 and August of 1999, KSA contacted the Plaintiffs in Minnesota on a bi-weekly basis. (Id. ¶¶ 10, 11.) During this time, the Plaintiffs received in Minnesota nine shipments from KSA, including, inter alia, four shipments of repaired equipment and two shipments of stereo products.[2] (Id. Exs. 1-5 (shipping documents); Ihrig Aff. Exs. 13-16 (same).)

In August 1999, KSA terminated its relationship with the Plaintiffs. (Lee Aff. ¶ 13.) The Plaintiffs subsequently filed suit in this Court on January 5, 2000.

---

[1] KSA disputes this assertion, arguing that several press releases and correspondence issued by the Plaintiffs after February 28, 1998 list Canorous' location as Nashville, Tennessee. (KSA's Reply Mem. at 3-4.)

[2] The value of these shipments is disputed. Lee avers that there were at least five product shipments with a total retail value of approximately $25,000. (Lee Aff. ¶ 12.) KSA argues that the evidence demonstrates that KSA made nine shipments of repaired or demonstration equipment worth $5,993.00. (KSA's Reply Mem. at 6.)

## Analysis

### A. Standard of Review

When a party challenges personal jurisdiction in a motion under Rule 12(b), the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). The burden of proof is on the party seeking to establish personal jurisdiction over the defendant; the burden of proof does not shift to the party challenging jurisdiction in a motion to dismiss for lack of personal jurisdiction. See Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992). Although the plaintiff bears the ultimate burden at trial of establishing personal jurisdiction, where the challenge is made in a motion to dismiss, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. See Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd., 89 F.3d 519, 522 (8th Cir. 1996). "For the purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." Id.

### B. The Merits

KSA argues that the Court should grant its Motion to Dismiss because this Court lacks personal jurisdiction and because venue is improper.

1. Personal Jurisdiction

Ordinarily, courts undergo a two-step analysis to determine whether personal jurisdiction may properly be exercised over a non-resident defendant: (1) is the exercise of jurisdiction permitted by the forum state's long-arm statute; and (2) would the exercise of jurisdiction by the courts of the forum state comport with constitutional due process. See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1387 (8th Cir. 1995). However, because Minnesota interprets its long-arm statute, Minn. Stat. § 543.19, subd. 1(b), to extend personal jurisdiction to the fullest extent permitted by due process, "the inquiry collapses into a single question of whether exercising personal jurisdiction [in this case] comports with due process." Bell Paper Box, Inc., v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994); see also Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 411 (Minn. 1992) ("If the personal jurisdiction requirements of the federal constitution are met, requirements of the long-arm statute will necessarily be met also.").

Under the Due Process Clause, "personal jurisdiction over a nonresident defendant is proper only if the defendant has certain minimum contacts with [the forum state] such that the maintenance of a suit does not offend traditional notions of fair play and substantial justice." See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quotation omitted). Sufficient contacts exist when the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. See Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183-84 (1985). This test is met if a defendant has deliberately engaged in activities within a state or created continuing obligations between a litigant and residents of the forum, and such actions invoke the benefits and protections of the state's laws. Id. at 475-76, 105 S. Ct. at 2183-84. When a nonresident has purposefully directed its activities to residents of the forum state and the litigation results from injuries arising out of these activities, the nonresident has "fair warning" that it could be sued in the forum state. Id. at 472, 105 S. Ct. at 2182.

The Court must consider five factors in determining whether the exercise of personal jurisdiction in any case comports with due process: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983). The first three factors are of increased importance vis-a-vis the fourth and fifth factors; because the first three factors are closely interrelated, the Court considers them together. See Northrup, 51 F.3d at 1388.

The Eighth Circuit has "further elaborated on the third factor– the relationship of the cause of action to the contacts– to distinguish between specific and general jurisdiction." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). A court may exercise "general" jurisdiction over a non-resident defendant who

has "continuous and systematic" contacts with the forum state, regardless of whether the plaintiff's claim or claims are related to any of those contacts. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416, 418-19, 104 S. Ct. 1868, 1872-73, 1874-75 (1984). If insufficient contacts exist to support general jurisdiction, a court may exercise specific jurisdiction over a non-resident defendant if the plaintiff's claims "arise out of or are connected with the [defendant's] activities within the [forum] state." International Shoe, 326 U.S. at 319, 66 S. Ct. at 160. "Conversely, when the plaintiff's claims do not relate to the defendant's forum-state activities, jurisdiction is likely to be improper since the defendant 'has no reason to expect to be haled before [the forum state's courts.]'" Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991) (quoting Toro Co. v. Ballas Liquidating Co., 572 F.2d 1267, 1271 (8th Cir. 1978)). In the instant case, the alleged contacts with Minnesota are all specifically related to the business relationship between the Plaintiffs and KSA, and the Plaintiffs do not argue that KSA maintains "continuous and systematic" contacts with Minnesota. Thus, the Plaintiffs assert specific rather than general jurisdiction over KSA.

The Plaintiffs have provided evidence of a number of contacts between KSA and Minnesota that were related to the underlying claims in this case. First, Lee avers that KSA engaged in, at a minimum, bi-weekly communications with him in Minnesota regarding the business venture between the parties from February 28, 1998 until August

of 1999. (Lee Aff. ¶ 10, 11.) The Plaintiffs also cite KSA's several product shipments to the Plaintiffs in Minnesota as other contacts with the forum state.[3] (Id. ¶ 12.)

"Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction." Digi-Tel, 89 F.3d at 523. Thus, the question before the Court is whether KSA's shipments to Minnesota, when viewed together with the alleged correspondence, are sufficient to establish personal jurisdiction. See Northrup, 51 F.3d at 1388 (defendant's contacts must be viewed in aggregate). The Court finds that the Plaintiffs have carried their burden of making a prima facie showing of personal jurisdiction over KSA. Accepting Lee's averments as true, KSA engaged in numerous communications for an extended period of time with the Plaintiffs in Minnesota with the goal of developing the business relationship between the parties. These communications, when added to the nine shipments KSA made to the Plaintiffs in Minnesota, constitute purposeful contacts with the forum state that were not "random," "fortuitous," or "isolated." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984). Rather, the nature and quality of KSA's contacts and communications with the Plaintiffs constituted specific business activity purposefully directed to the Plaintiffs in this state. See Aero Sys., 21 F. Supp. 2d at 997-98 (finding

---

[3] The Plaintiffs do not dispute KSA's assertion that it has no office, mailing address, phone number, employees, bank account, or property in Minessota. (Def.'s Reply Mem. at 5.) These facts, however, do not resolve the Court's inquiry. See Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp. 2d 990, 994-98 (D. Minn. 1998) (Tunheim, J., adopting Report and Recommendation of Mag. J. Erickson).

personal jurisdiction where defendant "actively nurtured and fostered a continuous business relationship" with plaintiff "through activities conducted in Minnesota"); Viking Eng'g & Dev., Inc. v. R.S.B. Enter., Inc., 608 N.W.2d 166, 169-70 (Minn. Ct. App. 2000) (interstate contract negotiations, combined with executed purchase order and acceptance of check, satisfied due-process requirements). Thus, the Plaintiffs have made a prima facie case that KSA "purposefully avail[ed] itself of the privilege of conducting activities within" Minnesota. Keeton, 465 U.S. at 774, 104 S. Ct. at 1478; see also Northrup, 51 F.3d at 1388-89.

The two secondary factors– the interest of Minnesota in having the case tried there and the convenience of the parties– also support jurisdiction. "Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents." Northrup, 51 F.3d at 1389. Furthermore, as the Northrup Court recognized, a plaintiff is normally entitled to select the forum in which it will litigate, and whatever inconvenience KSA might experience by being required to litigate in the United States is equaled by the inconvenience the Plaintiffs would experience by litigating in Switzerland. Id.

Therefore, the Court finds that the Plaintiffs have made a prima facie case that KSA has such minimum contacts with the forum state that the maintenance of the instant suit does not offend traditional notions of fair play and substantial justice. Accordingly, the Court will deny KSA's Motion as it relates to personal jurisdiction.

2. Venue

KSA also argues that Minnesota is not a proper venue for this action. Pursuant to the 1988 amendment to 28 U.S.C. § 1391(c), a defendant is "deemed to reside [for venue purposes] in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." The Plaintiffs have made a prima facie showing of personal jurisdiction over KSA. Thus, venue is proper under 28 U.S.C. § 1391(c). Accordingly, the Court will deny KSA's Motion as to venue.

**Conclusion**

For the foregoing reasons, and based upon all of the files, records, and proceedings here, **IT IS ORDERED**, that Defendant's Motion to Dismiss (Doc. No. 8) is **DENIED**.

July 13, 2000

RICHARD H. KYLE
United States District Judge